# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA GOMEZ DE RAMOS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:16-cv-00709-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Estella Gomez De Ramos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from headache, depressive disorder, anxiety disorder, and a history of arachnoid cyst. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 11, 12.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 10, 2009. (AR 342.) Plaintiff's applications were initially denied on January 13, 2010, and denied upon reconsideration on July 12, 2010. (AR 122-125, 129-133.) Plaintiff requested and received a hearing before Administrative Law Judge Mary Parnow. Plaintiff appeared for a hearing on November 17, 2011. (AR 71-94.) On March 29, 2012, Plaintiff was found to be not disabled. (AR 97-111.) On September 4, 2013, the appeals counsel remanded this action to the administrative law judge. (AR 117-120.)

On remand, Plaintiff appeared for a hearing on January 16, 2014, before Administrative Law Judge Danny Pittman ("the ALJ") which was continued for Plaintiff to obtain a neurological consultative examination. (AR 66-70.) Plaintiff appeared for a second hearing on July 10, 2014. (AR 34-64.) On September 15, 2014, the ALJ found that Plaintiff was not disabled. (AR 12-26.) The Appeals Council denied Plaintiff's request for review on March 22, 2016. (AR 5-7.)

## A. ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff last met the insured status requirements on December 31, 2013.
- Plaintiff did not engage in any substantial gainful activity from the alleged onset date of October 15, 2008 through the date last insured, December 31, 2013.
- Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: Plaintiff needs to avoid extreme noise and is limited to simple, routine tasks.
- Through the date last insured, Plaintiff was capable of performing her past relevant work as a fruit and vegetable harvest worker.
- Plaintiff was not under a disability as defined in the Social Security Act, at any time from October 13, 2008 through December 31, 2013.

(AR 17-25.)

**B.     Relevant Medical Record**

Plaintiff had a gynecological examination on May 9, 2008. (AR 513.) Plaintiff was seen on August 7, 2008, after having been stung by a bee and being put on antibiotics with vaginal itching and discharge. (AR 437, 438.)

On May 11, 2009, Plaintiff was seen for a gynecological examination. (AR 436.)

Plaintiff was seen on August 3, 2009, complaining that she had been unable to sleep for four days. (AR 433.) She was taking advil. (AR 433.) Plaintiff was seen on August 5, 2009 for a follow up. (AR 435.) She reported no pain. (AR 435.) On August 7, 2009, Plaintiff was seen after having been in a car accident the prior month in which she was not injured. (AR 434.) Plaintiff was complaining of being anxious and not being able to sleep for two weeks. (AR 434.) On August 31, 2009, Plaintiff was seen complaining of insomnia and her hair falling out. (AR 430.) She complained of neck pain of 10 out of 10. (AR 430.) Plaintiff was diagnosed with insomnia and neck pain. (AR 430.)

Plaintiff was seen on September 10, 2009 for a follow-up. (AR 428.) She complained of severe neck pain, 8 out of 10 with no improvement. (AR 428.) On September 16, 2009, Plaintiff was seen for a lump on her right breast. (AR 427.) She reported head and neck pain of 10 out of 10 and was taking ambien and ibuprofen. (AR 427.) On September 23, 2009, Plaintiff was seen complaining of loss of sleep. (AR 503.) She reported no pain. (AR 503.) On September 28, 2009, Plaintiff was seen for an endocrinology consult. (AR 424.) She reported head pain at 8 out of 10, was taking ambien and ibuprofen, and had no new complaints. (AR 424.)

On October 15, 2009, Plaintiff complained of a headache and feeling dizzy and tired. (AR 491.) She reported her head pain at 10 out of 10. (AR 491.) On October 28, 2009, Plaintiff was seen for follow up on her labs and reported her pain as 8 out of 10 and that she was doing fine. (AR 502.) Plaintiff was seen on October 30, 2009 complaining of breast pain and a vaginal infection. (AR 490.) She reported pain of 9 out of 10 in her left breast. (AR 490.)

On November 24, 2009, Plaintiff was seen for a sore throat and earache for 3 days. (AR 489.) She reported no pain. (AR 489.)

On December 10, 2009, Plaintiff reported that she still had headaches though they were a lot better. (AR 501.) She reported her head pain as 4 out of 10. (AR 501.) Plaintiff failed to show for an appointment on December 23, 2009. (AR 488.) On December 31, 2009, Plaintiff was seen with a urinary tract infection and yeast infection. (AR 487.) She reported head pain at 6 out of 10. (487.)

On January 11, 2010, Plaintiff was seen and reported she was doing fine, but had gained six pounds. (AR 500.) On January 29, 2010, Plaintiff was seen for pelvic pain. (AR 486.) She reported no pain, except that she was having pain of 7 to 8 out of 10 with intercourse. (AR 486.) On February 1, 2010, Plaintiff was seen because she needed disability paperwork. (AR 485, 523.) She reported having head pain of 5 out of 10. (AR 485.) Plaintiff's disability was continued until her thyroid condition became stable. (AR 524.)

On February 8, 2010, Plaintiff was seen for a follow up. (AR 499.) Plaintiff reported that she was doing fine, but was having difficulty sleeping, feels anxious a lot and got tremors. (AR 499.)

On March 1, 2010, Plaintiff was seen for a follow up. (AR 497.) She reported no pain. (AR 497.) Plaintiff reported good response to Xanax. (AR 497.) Plaintiff was seen on March 10, 2010, for disability forms. (AR 528-529.) She reported pain of 5. (AR 529.). On March 17, 2010, Plaintiff was seen for a follow up visit. (AR 531.) She reported pain of 8 and was assessed with anxiety and depression. (AR 531.) On March 30, 2010, Plaintiff had a follow up and reported her anxiety was okay. (AR 535.)

Plaintiff was seen on April 20, 2010. (AR 541.) She reported no pain. (AR 541.)

On June 12, 2010, Plaintiff reported decreased appetite and nausea, hot flashes, dizziness, and insomnia. (AR 543.) She reported pain at 2. (AR 544.) On July 8, 2010, Plaintiff was seen after having gone to Mexico to see a neurologist. (AR 571.) Plaintiff reported pain of 9. (AR 572.)

Plaintiff was seen on September 13, 2010 reporting headaches. (AR 566.) She reported no pain. (AR 567.) On September 22, 2010, Plaintiff was seen for a follow up. (AR 562.) She reported less headaches with her medication. (AR 562.) She reported no pain. (AR 563.)

On December 10, 2010, Plaintiff was seen and reported feeling fine since her last visit. (AR 560.) She reported having a migraine headache three times per week, anxiety and insomnia. (AR 560.) Plaintiff reported no pain. (AR 561.)

On January 26, 2011, Plaintiff was seen and reported headaches. (AR 642.) Pain was reported as 7. (AR 643.) Plaintiff's examination was normal. (AR 642-643.)

On February 8, 2011, Plaintiff was seen with a yeast infection and for a pregnancy test. (AR 639.) She reported her pain as 8. (AR 639.) Plaintiff's examination was normal and her pregnancy test returned positive. (AR 639-640.) Plaintiff was seen on February 23, 2011. (AR 634.) Examination was normal. (AR 636.) On February 24, 2011, Plaintiff had a thyroid check. (AR 626.) Plaintiff was 8 weeks pregnant. (AR 626.) Plaintiff reported pain of 7. (AR 627.) Examination was normal other than some abdominal tenderness. (AR 627.)

Plaintiff was seen on April 21, 2011 for a follow up visit. (AR 616.) She reported no pain. (AR 617.)

On June 9, 2011, Plaintiff was seen complaining of headaches, body aches, and tiredness. (AR 611.) She reported fever and chills, headache, and excessive sweating with no nausea. (AR 611.) She reported no pain. (AR 612.) Other than some abnormal gynecological findings and abdominal tenderness in the lower quadrants, Plaintiff's examination was normal. (AR 612.) On June 30, 2011, Plaintiff was seen for a thyroid check. (AR 600.) She complained of headaches. (AR 500.) Plaintiff reported no pain and had a normal examination. (AR 601.) Plaintiff was seen on July 15, 2011 for a follow up on her thyroid. (AR 598.) She complained of headaches. (AR 598.) She reported no pain and examination was normal. (AR 598.)

Plaintiff was seen on October 19, 2011, complaining of headaches and excessive sweating with no nausea. (AR 591.) She reported no pain. (AR 593.) Plaintiff had a normal examination. (AR 592.) Plaintiff was seen on October 24, 2011, and reported daily headaches. (AR 588-589.) Plaintiff reported no pain and examination was normal. (AR 589.)

On October 25, 2011, Martin completed a headache residual functional capacity questionnaire. (AR 575-579.) Martin stated that Plaintiff had been seen for medical examination one to three months for fifteen to thirty minutes. (AR 575.) Plaintiff had migraine headaches,

hypothyroidism, depression, anxiety, fibromyalgia, chronic pain syndrome, and insomnia. (AR 575.) Martin stated that Plaintiff had daily headaches that were moderate to severe. (AR 575.) Other symptoms included vertigo, nausea/vomiting, malaise, photosensitivity, visual disturbances, and mental confusion/inability to concentrate. (AR 575.) Plaintiff's headaches lasted 8 hours. (AR 576.) Plaintiff's headaches are triggered by lack of sleep, stress, and weather changes. (AR 576.) Her headaches are made worse by bright lights, coughing, straining/bowel movements, moving around, and noise. (AR 576.) Plaintiff's headaches are made better by lying in a dark room and medication. (AR 576.) The objective signs of Plaintiff's headaches were impaired sleep and impaired appetite or gastritis. (AR 576.) Plaintiff's impairments are explained by anxiety/tension and migraines. (AR 577.) Plaintiff is not a malingerer and her headaches are very much contributed to by emotional factors. (AR 577.) Plaintiff has been referred to a neurologist and has used medications with a fair response. (AR 577.) Plaintiff's medications cause drowsiness and fatigue. (AR 577.) Plaintiff is precluded from performing even basic work activities when she has a headache. (AR 578.) Plaintiff would need daily breaks of 4 to 8 hours before resuming work. (AR 578.) Plaintiff is incapable of even low stress jobs because stress increases her headaches and anxiety and depression limit her ability to concentrate and perform work duties. (AR 578.) Plaintiff's impairments would cause her to be absent from work more than four times per month. (AR 578.) Plaintiff needs to avoid temperature extremes, noise and fumes, and gases may exacerbate her migraine headaches. (AR 579.) The restrictions became effective on April 20, 2010. (AR 579.)

On June 4, 2013, Plaintiff was seen reporting that she was having more frequent headaches. (AR 687.) She reported feeling dizzy and waking up with a headache. (AR 687.) On August 20, 2013, Plaintiff reported that she was doing a little better but still had some headaches. (AR 686.) Plaintiff's speech was slow but examination results were normal. (AR 686.)

On November 8, 2013, Martin completed a second headache residual functional capacity questionnaire opining more severe limitations. (AR 689-693.) The report is similar to the

October 25, 2011 report except that Martin stated that she had seen Plaintiff monthly for 30 minutes. (AR 689.) Martin added a diagnosis of back pain. (AR 689.) Plaintiff's headaches were characterized by left sided migraine radiating to the left eye, severe, 3 to 4 times per week lasting 8 to 10 hours. (AR 689.) Plaintiff's symptoms also included mood changes. (AR 698.) Plaintiff's headaches occurred 3 to 4 times a week and lasted 8 to 10 hours. (AR 690.) Plaintiff's headaches were also triggered by bright lights, strong odors, and vigorous exercise. (AR 690.) The test results and objective signs relied on were tenderness and MRI results, endocrinology evaluation and neurology evaluation. (AR 690.) Plaintiff's headaches were also explained by history of head injury and sinusitis. (AR 691.) Plaintiff is taking acetazolamide and has had mild improvement. (AR 691.) Plaintiff is also taking 800 mg ibuprofen and Vicodin. (AR 691.) Plaintiff's medications cause constipation, hemorrhoids, and drowsiness. (AR 691.) Plaintiff's limitations in lifting, bending, stooping, needing to avoid temperature extremes, wetness, humidity, noise, dust, fumes, gases or hazard affect her ability to perform work on a sustained basis. (AR 693.) These restrictions became effective in 2008. (AR 693.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not

1     disabled.

2     Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

    Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

    Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

    "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

8

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff brings this action alleging the ALJ erred by failing to properly evaluate the opinion of Debra Martin, a certified nurse practitioner. Defendant responds that the reasons challenged by Plaintiff are germane reasons to reject Martin's opinion and that the opinions of the other medical providers are another germane reason to reject Martin's opinion. Plaintiff responds that Defendant's opposition is unresponsive to the issues raised and seeks remand for benefits.

Under the Social Security regulations, 'licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)). A nurse practitioner is considered an other medical source and is not entitled to the same deference as acceptable medical sources. Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015); Molina, 674 F.3d at 1111. The ALJ only needs to provide reasons germane to the witness to discount testimony from these other sources. Molina, 674 F.3d at 111.

The ALJ gave very little weight to two headache residual functional capacity questionnaires completed by Martin. (AR 22.) The ALJ found that the record was void of any treatment for 2012 and Plaintiff had only been seen twice in 2013. (AR 22.) Citing Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995), Plaintiff argues that she only sought limited medical treatment due to her lack of sufficient funds and medical insurance. Here, the ALJ is considering the credibility of the third party testimony, and Gamble does not address the credibility of third party testimony. In determining the credibility of a third party, Plaintiff's reasons for failing to seek treatment are not the relevant inquiry.

Nurse Martin stated in her November 8, 2013 report that it was based on medical monthly contact of 30 minutes. (AR 689.) Plaintiff was seen on October 24, 2011. (AR 588-589.) Plaintiff was not seen again until June 4, 2013. (AR 687.) Plaintiff's next appointment was August 20, 2013. (AR 686.) There is substantial evidence to support the ALJ's finding that Plaintiff was not seen monthly, but that the record was void of any treatment for 2012 and that

Plaintiff had only been seen twice in 2013. Nurse Martin's testimony that she based her opinion on monthly contact with Plaintiff contradicts with the medical record that shows Plaintiff was not seen from October 2011 to June 2013, and then again in August 2013. Nurse Martin's testimony in conflict with the medical record is a germane reason to reject her opinion.

The ALJ also rejected the extreme limitations provided by Nurse Martin because Plaintiff was only taking ibuprofen for her headaches. (AR 22.) In her report, Nurse Martin stated that Plaintiff was taking acetazolamide, ibuprofen and Vicodin. (AR 691.) While, as Plaintiff argues, other medications had been prescribed, Plaintiff testified at the July 10, 2014 hearing that she was only taking ibuprofen (AR 45-46). Nurse Martin's opined limitations were based upon Plaintiff's compliance with her prescribed treatment and the failure of such treatment to alleviate her symptoms. The ALJ's finding that Plaintiff was only taking ibuprofen for her headaches was a germane reason to reject the severe limitations opined by Nurse Martin.

The ALJ also found that the treatment record did not support the limitations which were opined. (AR 22.) Nurse Martin opined that Plaintiff's anxiety and depression frequently limit her ability to concentrate and perform work (AR 692), however the treatment notes exhibit generally normal mental examinations with some findings of anxiety and depression and do not support such limitations in concentration (AR 434, 500, 501, 504, 529, 531, 533, 535, 537, 541, 543-544, 560-561, 562, 566, 592, 588, 601, 612, 626-627, 642-643, 687).

The ALJ found that Martin noted some positive test results and objective signs to include tenderness and an MRI, but the MRI was not part of the treating record from Martin. (AR 22.) It does appear that the record before Martin included the MRI, however, since the ALJ provided other germane reasons to reject the opinion of Nurse Martin, any error in discounting Nurse Martin's opinion based upon the lack of the MRI results was harmless. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

Finally, the parties disagree as to whether the ALJ's findings regarding the other medical providers in the record are specifically identified as a germane reason to reject the opinion of Nurse Martin. However, since the Court has found that the ALJ provided germane reasons to reject the opinion of Nurse Martin, it declines to decide whether the ALJ's analysis is sufficient

to provide a germane reason to reject Nurse Martin's opinion.

The Court finds that the ALJ provided germane reasons to reject the opinion of Nurse Martin.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ provided germane reasons to reject the opinion of Nurse Practitioner Martin. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Estella Gomez de Ramos. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **May 9, 2017**

UNITED STATES MAGISTRATE JUDGE